**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JOHNNY BLASH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO** |
| **V.** | ) | **5:17-CV-380(LJA)** |
| | ) | |
| **CITY OF HAWKINSVILLE &** | ) | |
| **PULASKI COUNTY, GEORGIA** | ) | |
| **SHERIFF'S OFFICE, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT BILLY CAPE'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT OF SAME**

COMES NOW BILLY CAPE, a Defendant in the above-styled civil action, and, pursuant to Fed. R. Civ. P. 12(b)(6), files this Motion to Dismiss.

## INTRODUCTION

Billy Cape has been sued in his individual capacity only. Doc. No. 1 at ¶ 4. Plaintiff's Complaint asserts claims against Cape and the other named Defendants under Title VII and Section 1981 arising from his termination from the Pulaski County Sheriff's Office as well as from an environment that Plaintiff claims was racially hostile. Id. at ¶¶ 21, 31. Billy Cape contends that Plaintiff's lawsuit as asserted against him should be dismissed in its entirety.

## STANDARDS GOVERNING MOTIONS TO DISMISS

A motion to dismiss must be viewed through the prism of the "elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). In assessing whether the plaintiff has pleaded the requisite elements, the reviewing court is obligated to distinguish between those allegations that are entitled to the "assumption of truth" and those allegations that are not so entitled. Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. With respect to the latter category, courts should not accept the truth of allegations that are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[1] Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. Moreover, a court is not required to accept legal conclusions as true. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949(citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at

---

1 The Supreme Court in Iqbal treated the following allegations as "conclusory" and, thus, not deserving of an assumption of truth: (1) that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [Iqbal]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'"; (2) "that [Attorney General] Ashcroft was the 'principal architect' of this invidious policy"; and (3) "that [FBI Director] Mueller was 'instrumental' in adopting and executing it." Iqbal, 556 U.S. at 680-81, 129 S.Ct. at 1951.

678, 129 S.Ct. at 1949(citation omitted). Moreover, because all complaints have to be viewed through the prism of plausibility first announced in Bell Atlantic Corporation v. Twombly, Iqbal, 556 U.S. at 684, 129 Ct. at 1953, facts based on information and belief are only accepted as true: "[1] where the facts are peculiarly within the possession and control of the defendant, or [2] where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). Only "sufficient factual matter" is considered in the context of a motion to dismiss. Iqbal, 556 U.S. at 677, 129 S.Ct. at 1949.

Once the irrelevant is separated from the relevant, the question is whether the properly considered facts have caused the lawsuit to cross "the line from conceivable to plausible." Iqbal, 556 U.S. at_680, 129 S. Ct. at 1951. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 680, 129 S.Ct. at 1950-51.

Against this backdrop, the facts properly assumed to be true that are relevant to the claims against Defendant Cape are set forth below.

## FACTS

Plaintiff, an African-American male, was employed by the Pulaski County Sheriff's Office from June 2010 to December 2014. Doc. No. 1 at ¶¶ 1, 9. At all times relevant to this lawsuit, Billy Cape was the Sheriff of Pulaski County, id. at ¶

4, and Danny Brannen was a Captain in the Sheriff's Office. Id. at ¶¶ 11, 28. Former Sheriff Cape is Caucasian. Id. at ¶¶ 10. Former Sheriff Cape terminated Plaintiff's employment on December 1, 2010, after Plaintiff refused to resign. Id. at ¶¶ 22, 30, 31. Brannen "insisted" that Plaintiff be terminated. Id. at ¶ 29. Plaintiff's request for an independent investigation to be conducted and his offer to take a polygraph were rejected. Id. at ¶¶ 33, 34.

After his termination, Plaintiff was indicted for the same alleged conduct giving rise to his termination. Id. at ¶ 40. Specifically, Plaintiff was terminated and indicted for "willfully obstruct[ing]" a federal law enforcement officer on November 23, 2014, when he provided "confidential information in an active case to a potential suspect." True and correct copy of Indictment No. 2015R-11768, attached hereto as Exhibit A; see also Doc. No. 1 at ¶ 40.

**"FACTS" CONCERNING DANNY BRANNEN**

Plaintiff makes specific allegations concerning Brannen in support of his hostile work environment claim. Although those allegations make specific, non-conclusory allegations concerning Brannen, see Doc. No. 1 at ¶¶ 16, 18-20, it is clear from the context of those allegations and the use of the qualifier "on information and belief" that Plaintiff was not present when those incidents allegedly occurred. The Complaint merely alleges the occurrence of those incidents without an explanation as to how he acquired knowledge of those alleged

incidents. As such, former Sheriff Cape contends that those allegations are not assumed to be true because they lack "further factual enhancement." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (citation omitted). Nonetheless, in an abundance of caution, former Sheriff Cape has addressed those allegations in his brief. See infra at Part III.

**CONSIDERATION OF THE CERTIFIED COPY OF THE INDICTMENT (EXHIBIT A)**

It is well known that a motion to dismiss will be converted into a motion for summary judgment when matters outside the pleadings are considered. However, this rule is subject to several important limitations. A reviewing court at the motion to dismiss stage can review, in addition to the Complaint, "documents incorporated into the complaint, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). Significantly, Plaintiff's Complaint expressly references the indictment. See Doc. No. 1 at ¶ 40.[2]

Moreover, under the law, a court can "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). Defendant's attachment of a true and correct copy of the indictment is not

---

2 In an abundance of caution, former Sheriff Cape will be filing a forthcoming motion requesting that this court take judicial notice of the indictment.

gratuitous when viewed through the prism of Plaintiff's Complaint. Plaintiff has purposefully invoked his indictment in an attempt to bolster his unlawful termination claims. Specifically, because the indictment was nol prossed, Doc. No. 1 at ¶ 41, Plaintiff has alleged that his termination and the indictment are inextricably intertwined, id. at ¶ 41, in an attempt to establish that he was wrongfully terminated.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I. COUNTS ONE AND TWO SHOULD BE DISMISSED AS INDIVIDUALS ARE NOT AMENABLE TO SUIT UNDER TITLE VII

Individuals are not amenable to suit under Title VII. Dearth v. Collins, 441 F.3d 931, 933-34 (11th Cir. 2006); Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (citation omitted); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Accordingly, Counts One and Two should be dismissed as to former Sheriff Cape.

### II. FORMER SHERIFF CAPE IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO COUNT THREE

Count Three sets forth a race discrimination claim under Section 1981 relating to Plaintiff's termination. Doc. No. 1 at p. 14. As noted in Part II of Pulaski County's Motion to Dismiss at Part II, filed contemporaneously herewith, this claim has to be asserted under Section 1983. When asserted against state actors, discrimination claims pressed under Title VII and Section 1981 are

evaluated under the "same analytical framework" applicable to claims pressed under the Equal Protection Clause. Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Against this legal backdrop, former Sheriff Cape will address his entitlement to qualified immunity.

Qualified immunity protects "government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017)(citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted)). "As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Id. (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

To receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Once the public official establishes discretionary authority, the burden shifts to the plaintiff to establish the following: "(1) the

official 'violated her federal constitutional or statutory rights, and (2) that those rights were clearly established at the time the officer acted.'" Rushing v. Parker, 599 F.3d 1263, 1265-66 (11th Cir. 2010)(citation omitted).

**A. FORMER SHERIFF CAPE WAS ACTING WITHIN THE SCOPE OF HIS DISCRETIONARY AUTHORITY WHEN HE TERMINATED PLAINTIFF**

It is clear as a matter of law that a Sheriff in Georgia is acting within his/her discretionary authority when making employment decisions. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1321 (11th Cir. 2000). As a result, former Sheriff Cape was acting within his discretionary authority when he terminated Plaintiff.

**B. PLAINTIFF CANNOT MEET HIS BURDEN OF ESTABLISHING THAT PLAINTIFF'S RIGHTS NOT TO BE TERMINATED WERE CLEARLY ESTABLISHED AT THE TIME OF HIS TERMINATION**

Plaintiff has to show that a reasonable Sheriff would know that terminating a deputy sheriff for allegedly interfering with a federal criminal investigation violated clearly established law. Rioux v. City of Atlanta, 520 F.3d 1269, 1283 (11th Cir. 2008)(citing Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1294 (11th Cir. 2000)).

The law was only "clearly established" for qualified immunity purposes if former Sheriff Cape had "fair warning" that his alleged actions violated federal law when those alleged acts occurred. Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct.

2508, 2515, 153 L.Ed.2d 666 (2001).[3] Although typically qualified immunity is not available when an employment claim is based on race discrimination, qualified immunity is possible where an "an adequate lawful motive is present" even though "a discriminatory motive might also exist." Foy v. Holston, 94 F.3d 1528, 1534 (11th Cir. 1996). This deviation from the general rule is attributable to the fact that state officials "can be motivated, in part, by a dislike or hostility toward a certain protected class to which a citizen belongs and still act lawfully ...." Id. at 1534 (citation omitted).

As a result, government officials are entitled to qualified immunity when it is undisputed that the employment action was motivated, at least in part, by lawful considerations. Rioux, 520 F.3d at 1284–85 (extending qualified immunity to defendant because *undisputed* evidence showed that decisions were motivated at least in part by lawful justifications); Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000)(finding that defendant was entitled to qualified immunity when his actions were *indisputably* motivated by lawful considerations); see also Foy, 94 F.3d at 1535 (concluding that defendants were entitled to qualified

[3] Plaintiffs in the Eleventh Circuit can establish that the government official had fair warning via one of the following three (3) methods: (1) pointing to a "materially similar case" that "has already been decided"; (2) pointing to "a broader, clearly established principle that should control the novel facts of the situation"; and (3) proving that the conduct at issue "so obviously violate[d] the constitution that prior case law is unnecessary." Fransen, 857 F.3d at 852 (citation omitted).

immunity because the record showed *indisputable* and sufficient lawful motivations).

Although this matter is at the dismissal stage, it cannot be disputed that Plaintiff's termination on December 1, 2014, was indisputably motivated by lawful considerations.[4] Plaintiff alleges that he was indicted for the very conduct that led to his termination. Doc. No. 1 at ¶ 40 ("Indictment No. 2015R-11768 was brought against Mr. Blash by Pulaski County based upon the bogus allegations upon which he was terminated"); see also Doc. No. 1 at ¶¶ 24, 37, 38. A review of that indictment (Exhibit A at p. 3), reflects that, among other things, Plaintiff was indicted for willfully obstruct[ing]" a federal law enforcement investigation conducted on November 23, 2014, when he provided "confidential information in an active case to a potential suspect." As a result, the record reflects that the termination was indisputably motivated by lawful considerations. Doc. No. 1 at ¶ 40; Exhibit A at p. 3. With respect to former Sheriff Cape, Plaintiff's Complaint does not cross "the line from conceivable to plausible." Iqbal, 556 U.S. at 680, 129 S. Ct. at 1951.

Because it was not clearly established that former Sheriff Cape could be held liable for terminating a Deputy Sheriff accused of interfering with a federal

---

[4] Plaintiff does not allege that any employees who allegedly interfered with criminal investigations were retained. See Doc. No. 1. Instead, in an attempt to establish disparate treatment, Plaintiff cites the inapposite situation of officers being accused of using excessive force. Doc. No. 1 at ¶¶ 35-36.

criminal investigation eight (8) days before his termination, compare Doc. No. 1 at ¶ 9 with Exhibit A at p. 3, he is entitled to qualified immunity.

## III. COUNT FOUR SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO ALLEGE SUFFICIENT FACTS TO SUBJECT FORMER SHERIFF CAPE TO PERSONAL LIABILITY ARISING FROM THE ALLEGED HOSTILE WORK ENVIRONMENT

Count Four sets forth a hostile work environment claim under Section 1981. As is the case with Count Three, this Section 1981 claim has to be brought under Section 1983. This count should be dismissed for the following reasons: (1) Plaintiff has failed to allege a cognizable hostile work environment claim; (2) Plaintiff has failed to allege facts that would entitle him to prevail against former Sheriff Cape; and (3) former Sheriff Cape is entitled to qualified immunity.

### A. PLAINTIFF HAS NOT ALLEGED SUFFICIENT UNDERLYING FACTS THAT SUPPORT AN INFERENCE OR CONCLUSION THAT HE WAS SUBJECTED TO SEVERE OR PERVASIVE CONDUCT

Plaintiff's hostile work environment claim asserted under sections 1981 and 1983 is evaluated using the same analytical framework that applies to hostile work environment claims pressed under Title VII. Bryant, 575 F.3d at 1296, fn. 20. As a result, former Sheriff Cape will address Plaintiff's hostile work environment claim through reference to Title VII. Id.

Among other things, a plaintiff asserting a hostile work environment claim must establish that "the harassment was sufficiently severe or pervasive to alter the

terms and conditions of employment and create a discriminatorily abusive working environment." Id. at 1296 (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). A review of Plaintiff's Complaint reveals that Plaintiff's hostile work environment claim is deficient as a matter of law in that he has not alleged facts regarding being subjected to racial harassment that was sufficiently severe or pervasive.

The essence of a hostile work environment is a workplace infused with "intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012). In order to constitute a hostile work environment, the work conditions must be objectively hostile and/or abusive. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). That is, it is not enough for the plaintiff to establish that she personally viewed the work conditions as hostile and/or abusive.

"In evaluating the objective severity of the harassment, [the Court] consider[s], among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

The frequency element requires more than a handful of harassing incidents. For example, the Eleventh Circuit Court of Appeals has held that five (5) instances of harassment along with "constant following" over a period of eleven months were "far too infrequent to alter the conditions under which [the plaintiff] was required to perform her job." Mendoza v. Borden, Inc., 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc); see also Murphy v. City of Aventura, 383 F. App'x 915, 918 (11th Cir. 2010)(holding that nine instances of a supervisor using terms like "slut," "whore," "bitch," and "hooker" over the course of three years was neither severe nor pervasive); McCann v. Tillman, 526 F.3d 1370, 1378-79 (11th Cir. 2008), cert. denied, 555 U.S. 944, 129 S.Ct. 404, 172 L.Ed.2d 286 (2008)(holding that a black employee's allegations that a white employee called her "girl" and two male black employees "boys," and that another coworker referred to a former black employee as a "n***** bitch" did not amount to severe or pervasive harassment."); Jackson v. Alabama Dept. of Corrections, 643 Fed. Appx. 889 (2016)(holding that ten instances of harassment over three months was not sufficient to establish a hostile work environment claim); Alexander v. Opelika City Schools, 352 Fed. Appx. 390, 2009 WL 3739441 (11th Cir. 2009)(holding plaintiff failed to establish severe and pervasive conduct when he alleged that his supervisor called him "boy" on eight occasions over the course of two (2) years and stated in his presence that he wanted to "tie a noose around" someone's neck).

Although Plaintiff alleges in conclusory fashion that Brannen, while a Captain, made "unambiguous statements reflecting that he harbored racial animus against African Americans in general and against Plaintiff Blash specifically" Doc. No. 1 at 15, Plaintiff's Complaint only identifies four (4) discrete incidents supporting his hostile work environment claim:

"On information and belief," Defendant Brannen stated "in or about 2012" that "If you're black and your lips are moving you're lying." Doc. No. 1 at ¶ 16.

"On information and belief" then-Captain Brannen "[i]n or about 2014," told a "Caucasian woman" arrested by Plaintiff, "Don't worry, I'll get that n_____ before you do." Doc. No. 1 at ¶ 18.

"On information and belief," then-Captain Brannen explained to Deputy Mike Thomas that he was not promoted because "We promote one black and one white." Doc. No. 1 at ¶ 19.

"On information and belief," when Deputy Mike Thomas refused to use a "Taser on a black male who was in custody," then-Defendant Brannen told Deputy Mike Thomas, "When I tell you to Taze a m……….r, you better Taze him." Doc. No. 1 at ¶ 20.

These four (4) incidents occurred over at least a two (2) year period. Compare Doc. No. 1 at ¶ 16 with Doc. No. 1 at ¶ 18. Based on the case law cited above, it is clear that these incidents when considered in their totality cannot be

considered actionable harassment. This is particularly true because of the nature of Plaintiff's knowledge concerning these alleged incidents.

None of these alleged statements as recounted by Plaintiff was directed towards him. See Doc. No. 1 at ¶¶ 16, 18-20. Moreover, none of these alleged incidents occurred in his presence as reflected by the use of the "on information and belief" qualifier. Although a hostile work environment claim can be predicated upon harassing conduct or statements the plaintiff learned second-hand through hearsay, it is axiomatic that harassing conduct learned through second-hand reports will be less severe than comments learned through direct knowledge. E.g., Williams v. Ruskin Co., Reliable Div., slip opinion, 1:10–cv–508–WC, 2012 WL 692964, at * 14 (M.D. Ala, March 1, 2012)(holding conduct learned through hearsay are not as severe as comments and conduct that a plaintiff hears or experiences first-hand); Harper v. ULTA Salon Cosmetics & Fragrance, Inc., slip opinion, 1:05-CV-1285-TWT, 2007 WL 5280 *88, at 33 and fn. 44 (N.D. Ga., February 13, 2007); Caruso v. City of Cocoa, Fla., 260 F.Supp.2d 1191, 1221-22 (M.D. Fla. 2003)(citing cases and finding that offensive comments made outside of plaintiff's presence were not severe). Stated differently, comments directed at a plaintiff and in front of others add to the plaintiff's humiliation and degradation. Miller, 277 F.3d at 1276.

Accordingly, Plaintiff's hostile work environment claim asserted under Section 1981 via section 1983 should be dismissed.

### B. PLAINTIFF HAS FAILED TO ALLEGE FACTS THAT COULD SUBJECT FORMER SHERIFF CAPE TO PERSONAL LIABILITY

It is well established that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). In fact, "the standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Florida Department of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir.1998). Supervisory liability under Section 1983 can be established when the supervisor either personally participates in the alleged illegal conduct or when there is a causal connection between the actions of a supervising official and the deprivation of federal rights. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiff's Complaint does not allege that former Sheriff Cape engaged in any harassing conduct. See Doc. No. 1. Instead, Count Four is based on alleged actions of then-Captain Brannen. See Doc. No. 1 at ¶¶ 16, 18-20. Plaintiff does generally allege that former Sheriff Cape was aware of and tolerated the alleged hostile work environment created by then-Captain Brannen. Doc. No. 1 at ¶ 21.

Thus, former Sheriff Cape could only be held liable if there is a causal connection between his alleged actions/omissions and the deprivation of federal rights.

To establish "causal connection" in the Section 1983 supervisor context, the plaintiff must establish the following: the supervisor "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." Williams v. Kilgore, slip opinion, No. 5:11–CV–319 (MTT), 2011 WL 4443605, * 3 (M.D. Ga., Sept. 23, 2011)(quoting Gross v. White, 340 F. App'x 527, 531 (11th Cir. July 17, 2009) (citing Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007)).

Because Plaintiff failed to set forth facts that would permit the plausible inference that any of these prerequisites existed, see Doc. No. 1, Count Four should be dismissed for this additional reason.

**C. FORMER SHERIFF CAPE IS ENTITLED TO QUALIFIED IMMUNITY**

Based on Plaintiff's allegations, former Sheriff Cape's conduct as it relates to Plaintiff's hostile work environment claim can best be summarized as failing to take corrective action against then-Captain Brannen. See Doc. No. 1 at ¶¶ 17, 20. Because a Sheriff in Georgia is exercising discretionary authority when making employment decisions, Alexander, 207 F.3d at 1321, necessarily a Sheriff is

exercising discretionary authority when deciding the appropriate corrective action, if any, when confronted with employee misconduct.

As such, Plaintiff has to prove the following: former Sheriff Cape violated his right to be free from a hostile work environment and that Plaintiff's rights were "clearly established" when the alleged violation occurred. See supra at part II. Plaintiff cannot establish either prong of his dual burden.

Because Plaintiff has failed to allege a cognizable hostile work environment claim against him, see supra at parts III.A and III.B, Plaintiff necessarily cannot establish the first part of his two (2) part burden. Because a plaintiff has to establish both prongs, former Sheriff Cape is entitled to qualified immunity as a matter of law. Davis v. Carter, 555 F.3d 979, 984 (11th Cir. 2009); accord Mahone v. Ben Hill County School System, 1:07-CV-00064 (WLS), 2009 WL 10689626 *25 (M.D. Ga., September 30, 2009). Nonetheless, it is also clear that Plaintiff cannot prove using either of the three (3) approaches approved by the Eleventh Circuit Court of Appeals, see supra at part II at fn. 3, that former Sheriff Cape had fair warning that his alleged failure to take corrective action in response to the four (4) discrete incidents alleged by Plaintiff was unlawful.

## CONCLUSION

For the within and foregoing reasons, former Sheriff Cape prays that this court inquire into this matter and dismiss Plaintiff's lawsuit in entirety as asserted against him.

This 18th day of January, 2018.

Respectfully submitted,

**O'QUINN & CRONIN, LLC**

s/Donald A. Cronin
DONALD A. CRONIN
Georgia Bar No. 197270

Attorney for Defendant Cape

103 Keys Ferry Street
McDonough, Georgia 30253
(770) 898-0333 (telephone)
(770) 898-0330 (facsimile)
donald@oqclaw.com (e-mail)

## CERTIFICATE OF SERVICE

The "Notice of Electronic Filing" that will be automatically generated by the court's Electronic Filing System in response to the filing of the foregoing **DEFENDANT CAPE'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT OF SAME** will effect service upon all attorney(s) of record.

This 18th day of January, 2018.

**O'QUINN & CRONIN, LLC**

s/Donald A. Cronin
DONALD A. CRONIN
Georgia Bar No. 197270

Attorney for Defendant Cape

103 Keys Ferry Street
McDonough, Georgia 30253
(770) 898-0333 (telephone)
(770) 898-0330 (facsimile)
donald@oqclaw.com