IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

-------------------------------------------------------x

JOHNNY BLASH,                               :

                 Plaintiff,              :

vs.                                    :     CIVIL ACTION
                                          FILE NO. 5:17-cv-00380-TES

CITY OF HAWKINSVILLE &
PULASKI COUNTY, GEORGIA,      :
SHERIFF'S OFFICE; HAWKINSVILLE –
PULASKI COUNTY, GEORGIA; BILLY   :
CAPE; and DANNY BRANNEN,
Individually and in his Official Capacity as   :
Sheriff, Pulaski County, Georgia,

                                    :

               Defendants.

                                    :

-------------------------------------------------------x

**PLAINTIFF'S REVISED MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS
BY DANNY BRANNEN (DOC. 10)**

<u>Preliminary Statement</u>

      None of the cases cited by Defendant Danny Brannen ("Defendant Brannen"

or "Brannen") involved a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Instead,

<u>all</u> of the cases cited by Brannen involved motions for summary judgment under

Fed.R.Civ.P. 56 after full discovery. Plaintiff acknowledges that dismissal of

Counts 1 (Title VII[1], Discrimination) and 2 (Title VII, Harassment) is appropriate as to Brannen sued in his individual capacity because Title VII does not provide for individual liability. With respect to the other causes of action, Brannen has prematurely filed a motion which may only be granted – if at all – *after* discovery.

POINT I
PLAINTIFF ADEQUATELY PLEADS CAUSES OF ACTION
UNDER TITLE VII AND SECTION 1981[2]

Brannen misrepresents (Def. Br. pp. 2-5) *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) as requiring "further factual enhancement" regarding the source of the information where an allegation is made on information and belief. There is no such requirement, and the purported citation to *Iqbal* is actually a quote taken entirely out of context from *Twombly*. Thus, Brannen's citation to *Iqbal*, 556 U.S. at 678, quotes *Twombly*, 550 U.S. at 557.

*Twombly*, was a complaint alleging conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act, 15 U.S.C. §1. The Supreme Court held that allegations of parallel conduct, without more, were insufficient to plead violation of the Sherman Act because "the defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy." *Twombly*, 550 U.S. at 566-67.

---

[1] 42 U.S.C. Secs. 2000e *et seq.*
[2] 42 U.S.C. Sec. 1981.

The reference in *Twombly* – <u>not</u>, initially, in *Iqbal* – to "further factual enhancement" was to the requirement to plead the existence of an agreement among the defendants in addition to pleading mere parallel conduct. *Twombly*, 550 U.S. at 557. There is no language whatsoever in either *Twombly* or *Iqbal* requiring Plaintiff to plead "how he acquired knowledge of . . . alleged incidents." (Def. Br. p.5) and Brannen's suggestion that there is such a requirement is both misleading and unsupported by any authority.

Quite to the contrary, *Twombly* itself was clear that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Here, Brannen <u>admits</u> that Plaintiff has done so. (Def. Br. p. 4) ("Plaintiff makes specific . . . . non-conclusory allegations regarding Brannen.").[3]

Brannen's citation to *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) is misplaced because the Second Circuit there stated unambiguously that ". . . the notion that *Twombly* imposed a heightened standard that requires a complaint to include specific evidence, [and] factual allegations in addition to those required by Rule 8 . . . is belied by the *Twombly* opinion itself." 604 F. 3d at

---

[3] In *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc*., 2011 WL 1004873 (E.D. Tex., Mar. 18, 2011) the court rejected a similar argument that allegations made on information and belief are insufficient to defeat a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

119. Further, *Arista Records* <u>did</u> <u>not</u> – as Brannen misleadingly suggests – hold that allegations made on information and belief "are only accepted as true" under certain conditions set forth in Brannen's brief at p. 3.

Brannen improperly excludes certain of Plaintiff's allegations, premised on the purported but erroneous requirement for "further factual enhancement" for allegations made on information and belief. In fact, accepting <u>all</u> of the factual allegations as pled – as this Court is required to do when deciding the motion to dismiss – Plaintiff clearly has pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See*, Complaint, ¶¶10 – 12, 15 – 21, 27 – 29.

Brannen's argument (Def. Br. p. 4) that "it is clear from the context of those allegations and the use of the qualifier 'on information and belief' that Plaintiff was not present when those incidents allegedly occurred" is also unavailing because Mr. Blash's awareness of those incidents – not his presence – is what is relevant for purposes of his hostile environment claim. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1252 (11th Cir. 2014).[4] In any event, Plaintiff's Complaint constitutes "a short and plain statement of the claim" and "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

---

[4] Discovery will adduce independent testimony establishing these statements and Plaintiff will testify to his awareness of those statements at or about the times they were made.

*Twombly*, 550 U.S. at 555, Fed.R.Civ.P. 8.  The cautionary comments of U.S.D.J.

Clay Land are particularly appropriate here:

> *Twombly* . . . did not suggest that the Supreme Court
> intended to rewrite Rule 12(b)(6) or abandon notice
> pleading . . . . But many lawyers (and judges) have
> interpreted the Supreme Court's decisions in *Twombly*
> and *Iqbal* as ushering in a new era for motions practice in
> federal court.  From this Court's perspective and
> experience, *Twombly* has become the most overused tool
> in the litigator's toolbox.

*Meyer v. Snyders Lance, Inc.*, No. 4:12-cv-215-CDL, 2012 WL 6913724, at *1

(M.D.Ga. Dec. 12, 2012).

POINT II
PLAINTIFF ADEQUATELY PLEADS RACIAL HARASSMENT
THAT WAS SEVERE AND PERVASIVE

¶¶15 – 18 and 21 of the Complaint "give[s] [Brannen] fair notice of what the

. . . claim [for racial harassment] is and the grounds upon which it rests." That is all

that is required at the pleading stage. *Twombly*, 550 U.S. at 555, Fed.R.Civ.P. 8.

Here, the Complaint alleges, *inter alia*, that Mr. Brannen – Mr. Blash's

superior – used racial epithets, including n-----, which he directed specifically at

Mr. Blash with reference to "get[ting] him", was required to take an anger

management class as a result of making racist statements, ordered an African

American suspect to be Tasered, and in other similar ways created and maintained

a racially hostile work environment.  The Complaint makes clear that Brannen was

Plaintiff's supervisor, which is a factor in assessing the severity of the harassing

5

conduct. "[A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals").

In addition, the Eleventh Circuit, along with other circuits, has recognized that [t]he use of the slur 'n-----' is severe." *Cooler v. Layne Christensen Co.*, 710 F. App'x 842, 848 (11th Cir. 2017); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a 'mere offensive utterance', the word 'n-----' is pure anathema to African-Americans."); *Rodgers*, 12 F.3d at 675 ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n-----' by a supervisor in the presence of his subordinates") (citation and internal quotation marks omitted); *Ellis v. Houston*, 742 F.3d 307, 325-26 (8th Cir. 2014); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004).

Here, the allegations of the Complaint are that Brannen used the word "n-----" with specific reference to "get[ting]" Plaintiff, that Mr. Plaintiff was aware of Brannen's other racist remarks and acts, including Brannen ordering an African

American suspect to be Tasered, and that in other similar ways Brannen created and maintained a racially hostile work environment. These allegations, which must be considered as true, support a race-based hostile environment claim and are sufficient to establish the "plausibility" of a hostile environment claim based on race. *Adams*, 754 F.3d at 1253-54. (in summary judgment context, single incident of supervisor carving "porch monkey" into aluminum is severe, supervisor humiliated plaintiff with a racial slur, and plaintiff was aware that supervisor had kicked two African American employees); *Boyer-Liberto v. Fontainebleau Corp*., 786 F.3d 264, 278 (4th Cir. 2015) (on summary judgment, "a reasonable jury could find that Clubb's two uses of the "porch monkey" epithet – whether viewed as a single incident or as a pair of discrete instances of harassment – were severe enough to engender a hostile work environment"); *La Grande v. DeCrescente Distributing Co., Inc*., 370 Fed. App'x 206, 211(2d Cir. 2010) (plaintiff's allegation of a hostile work environment claim sufficient to survive Rule 12(b)(6) motion where co-workers called African American men lazy, plaintiff's employer threatened to fire him, and seven month later, a manager physically threatened and called plaintiff a "n-----").

*During discovery*, Brannen may take Plaintiff's deposition to discover whether the racial harassment – unambiguously pled in the Complaint – was in fact "sufficiently severe or pervasive" so as to alter the terms and conditions of

employment and create a discriminatorily abusive working environment.

Brannen's motion to dismiss under Rule 12(b)(6) erroneously and improperly

relies upon decisions rendered under Rule 56, where motions for summary

judgment were granted *after discovery*.  In fact, Brannen fails to cite a single case

where the motion had been brought under Rule 12(b)(6).

The best example of this is Brannen's citation to and reliance upon *Murphy*

*v. City of Aventura*, 383 Fed. App'x 915 (11th Cir. 2010).  In that case the District

Court had initially denied a motion to dismiss under Rule 12(b)(6):

> After review of the Amended Complaint, the Court finds
> that Plaintiff has sufficiently stated a hostile work
> environment claim and more specifically, that she has
> sufficiently alleged that the harassment was of a sexual
> nature, that the harassment was based on her sex, and that
> the harassment was severe or pervasive . . . .
> This meets the requirements for Federal Rules of Civil
> Procedure 8 and is a short and plain statement of
> Plaintiff's claim.  This is all that is required for Plaintiff's
> claim to survive a motion to dismiss . . .

(Case No. 1:08-cv-20603-JEM, Doc. No. 81, p. 7 [citations to the record omitted]).

This was different from the subsequent grant of summary judgment, after

discovery, under Rule 56, which is the decision that Brannen cites. *See*, Doc. 189.

Significantly, the defendants' documents filed in support of the motion for

summary judgment contained, *inter alia*, transcripts of pretrial depositions taken

during discovery. *See*, Docs. 115-4, 115-7, 115-10.  *Murphy v. City of Aventura*,

cited by Brannen, demonstrates why his motion is – at best – premature, and must be denied by this Court at this pleading stage.

All of the other cases relied upon by Brannen were similarly decided under Rule 56 after full discovery, or indeed, after a trial: *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002) (trial); *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2010) (trial); *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999) (*en banc*) (Rule 50 motion at trial, after summary judgment had been denied); *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), *cert. denied*, 555 U.S. 944 (2008) (summary judgment under Rule 56 after discovery) (*see*, Case No. 1:05-cv00364-WS-B, Doc. Nos. 40, 44); *Jackson v. Alabama Department of Corrections*, 643 Fed. App'x 889 (11th Cir. 2016) (Rule 56, summary judgment, after discovery) (*see*, Case No. 2:14-cv-00018-MHT-SRW, Doc 57, p. 4); *Alexander v. Opelika City Schools*, 352 Fed. App'x 390 (11th Cir. 2009) (Rule 56, summary judgment after discovery) (*see*, Case No. 3:06-cv-00498-WKW, Docs. 37, 47, p. 4); *Williams v. Ruskin Co., Reliable Div.*, No. 1:10-cv-00508-WC, 2012, WL 692964 (M.D. Ala. Mar. 1, 2012)(Rule 56, summary judgment after discovery) (*see*, Doc. 36-2); *Harper v. ULTA Salon Cosmetics & Fragrance, Inc.*, slip opinion, No. 1:05-cv-1285-TWT, 2007 WL 5280 (N.D. Ga. Feb. 13, 2007) (Rule 56, summary judgment after discovery) (*see*, Docs. 68-78, 73, 74, 76, 87, 93); *Caruso v. City of Cocoa,*

*Fla.*, 260 F.Supp.2d 1191 (M.D. Fla. 2003) (Rule 56, summary judgment after trial) (*see*, 260 F.supp.2d at 1218).

Brannen's reliance on motion for summary judgment under Rule 56 for this motion to dismiss under Rule 12(b)(6) is fatal to his motion and requires this Court to deny it as a matter of law. *Alexander-Igbani v. Dekalb Cty. Sch. Dist.*, No. 1:11-cv-4535-AT-JSA, 2012 WL 9508020, at *5 (N.D. Ga. Dec. 21, 2012) (" . . . a Plaintiff's complaint need only make sufficient factual *allegations*, while a Plaintiff defending against a motion for summary judgment must cite *evidence* of an issue of material fact. The former occurs before any discovery has taken place, while the latter occurs after discovery has closed.") (emphasis in original); *Clark v. Allied Interstate LLC*, 2017 WL 2903358, at *5 (N.D. Ga. Jan. 20, 2017) (" . . . as Clark points out, 'the cases [Allied] cites [were] decided on summary judgment', which 'is not decided by the same standard as a motion to dismiss.'"); *Cartwright v. M2R, Inc.*, No. 5:14-cv-02213-SGC, 2016 WL 2131402, at *2 (N.D. Ala. June 8, 2016); *Garrido v. Beall Corp.*, No. CIV,10-845-AA, 2010 WL 5129699, at *2 (D. Or. Dec. 10, 2010).  Given Brannen's sole reliance on cases decided on summary judgment, granting a motion to dismiss based on the severity or pervasiveness of a hostile work environment would be an "extraordinary action." *Martinez v. City and County of Denver*, 2010 WL 1380529 (D. Colo. 2010) and should not be granted at this pleading stage by this Court.

## THE COMPLAINT ADEQUATELY SETS FORTH FACTS THAT CONNECT BRANNEN SUED IN HIS INDIVIDUAL CAPACITY WITH THE DISCHARGE DECISION TO SUPPORT A FINDING THAT HE EXERCISED EXTRAORDINARY INFLUENCE ON SHERIFF CAPE OR THAT HE ACTED AS A CAT'S PAW

A. "Extraordinary Influence"

*Dixon v. Burke County, Georgia*, 303 F.3d 1271 (11th Cir. 2002), upon which Brannen relies, in fact provides that Brannen may be held liable for the discharge decision if Plaintiff can prove that he (Brannen) exercised extraordinary influence over then-Sheriff Cape. In *Dixon*, the Court of Appeals held that the causation requirement regarding the hiring decision was broken by an independent grand jury, but noted that the causation requirement could nevertheless be proven if the defendant in that case exercised extraordinary influence over the grand jury:[5]

> With these principles in mind, we fully agree with the District Court that the causation requirement delivers a blow from which Dixon's §1983 case cannot recover. With regard to Perry, the acts of various other parties destroy any causal link between Perry's conduct and Chandler's selection for the Board vacancy. These acts include the votes of independent grand jurors and the action of an independent state Judge. Moreover, we note that after the vote took place, no grand juror objected to Chandler's name being presented to the Judge for final approval. Had Perry actually coerced the grand jurors into selecting only a white male, or exercised extraordinary influence over them, a problem would be manifest.

---

[5] For some reason, in *Dixon* a grand jury had been convened to make a hiring decision.

*Dixon*, 303 F.3d at 1275 (Emphasis added).

Here, Plaintiff has pled as much. *See*, ¶¶20, 29. Plaintiff is entitled to discovery to adduce additional facts that would demonstrate Brannen's "extraordinary influence" on Cape. It should be noted that in *Dixon*, the District Court's opinion was issued in response to Defendants' motion for summary judgment made under Rule 56, after discovery. *See*, Case No. 1:00-cv-00077-DHB, Docs. 19 (extending discovery), 23 (motion for summary judgment), 60, pp. 3-5 (referring to Defendant Perry's deposition).

Similarly, a District Court has noted that,

> . . . other circuits have . . . found that an "influential recommender can be liable under §1983 without being the final decisionmaker, if the recommendations are shown to be sufficiently influential." *Ward v. Athens City Bd. of Educ.*,No. 97-5967, 1999 WL 623730, at *8 (6th Cir. Aug. 11, 1999) (unpublished); *see also Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1072-73 (2d Cir. 1996) (concluding that probation department could be liable for recommendation to sentencing judge under §1983); *Balaban v. Lincoln Cnty. Ambulance Dist.*, No. 1268, 2007 WL 4205806, at *6 (E.D. Mo. Nov. 26, 2007) (noting that a "recommendation that leads to an adverse employment action may be sufficient to establish liability under §1983") (*citing, Darnell v. Ford*, 903 F.2d 556, 562 (8th Cir. 1990)); *Barmore v. Aidala*, 419 F.Supp.2d 193, 200 (N.D.N.Y. 2005) (finding that school principal could be liable for recommending to superintendent that African-American student be suspended, where student alleged that recommendation was race-based).

*Do Corp. v. Town of Stoughton*, No. CIV.A 13-11726-DJC, 2013 WL 6383035, at

*11 (D. Mass. Dec. 6, 2013).

Brannen misquotes *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)

as stating that an individual can "only" be held liable if he was "personally

involved in acts or omissions." (Def. Br. p. 6). The correct quote from *Zatler* is,

"A causal connection <u>may</u> be established by proving that the official was

personally involved in the acts that resulted in the constitutional deprivation. *See*

*Ancata v. Prison Health Services, Inc*., 769 F.2d 700, 706 (11th Cir. 1985)." *Zatler*,

802 F.2d at 401 (11th Cir. 1986) (Emphasis added).

The citation to *Ancata v. Prison Health Services, Inc*. is significant because

in that case the Eleventh Circuit held that dismissal *prior to discovery* had been

<u>improper</u>:

> At the stage in the litigation at which Sheriff Butterworth
> was dismissed, i.e., prior to discovery, it is impossible to
> say whether Butterworth played a role in demanding the
> court orders as a condition of obtaining medical care. Nor
> is it known which, if any, of the defendants chose to
> place the financial interest of the county ahead of
> Ancata's medical needs. Thus, <u>dismissal prior to
> discovery was unwarranted</u>.

*Ancata*, 769 F.2d at 706 (Emphasis added). Similarly here, Plaintiff is entitled to

discovery to adduce facts demonstrating that Brannen exercised sufficient

influence over then-Sheriff Cape regarding the discharge decision, as is pled in the Complaint, so as to make Brannen a *de facto* decision maker.[6]

B. "Cat's Paw"

After the Supreme Court's decision in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), a cat's paw theory has been applied to find that "individual liability is appropriately imposed on an unlawfully motivated subordinate (the monkey, in the cat's paw fable) under §1983." *Harris v. Pierce Cty., Ga.*, No. CV 513-82, 2014 WL 3974668, at *8 (S.D. Ga. Aug. 14, 2014). *Polion v. City of Greensboro*, 26 F. Supp 3d 1197, 1219 (S.D. Ala. 2014), *aff'd*, 614 Fed. App'x 396 (11th Cir. 2015) (the employee's retaliatory input . . . should suffice to establish his individual liability). On appeal, the 11th Circuit applied the cat's paw analysis in the §1983 context. *Polion*, 614 Fed. App'x 396 (11th Cir. 2015); *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (stating that five other circuits have held that individual liability under §1983 is appropriate on this basis), *overruled on other grounds*, *Ortiz v. Werner Enterprises, Inc.*, 834 F. 3d 760, 766 (7th Cir. 2016). Thus, the court in *Smith v. Bray* cited the following circuit decisions: *Tejada-Batista v. Morales*, 424

---

[6] Brannen's assertion at page 6 of his brief that "Plaintiff does not even allege that Brannen's insistence was a product of racial animus" is belied by ¶¶15-20 of the Complaint, which allege racist statements and acts against African Americans in general and against Blash specifically. Brannen's insistence that Blash be terminated, when read alongside ¶18 for example, which alleges that Brannen stated, regarding Blash, "Don't worry, I will get that n----- before you do", sufficiently links his insistence that Blash be terminated with his racial *animus*.

F.3d 97, 102 (1st Cir. 2005) (affirming jury verdict against subordinate law enforcement officers who, to retaliate against plaintiff for engaging in protected First Amendment activity, recommended plaintiff's discharge) (the "properly motivated" decision-maker "does not insulate [ ] the ill-motivated subordinate" who "is a but-for cause of the firing"); *Maestas v. Segura*, 416 F. 3d 1182, 1191 (10th Cir. 2005) ("While Segura made the final decision to transfer Plaintiffs, Pratt, though a subordinate, might be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers."); *Strahan v. Kirkland*, 287 F. 3d 821, 826 (9th Cir. 2002) ("Even if the ultimate decision-maker can establish that the adverse action was not in retaliation for protected conduct, a subordinate with a retaliatory motive can be liable 'if an improper motive sets in motion the events that lead to termination that would not otherwise occur . . . . [A] subordinate cannot use the nonretaliatory motive of a superior as a shield against liability if that superior never would have considered a dismissal but for the subordinate's retaliatory conduct,'") (emphasis added), *quoting*, *Gilbrook v. City of Westminster*, 177 F. 3d 839, 854-55 (9th Cir. 1999); *Darnell v. Ford*, 903 F. 2d 556, 561-62 (8th Cir. 1990) (affirming jury verdict against defendant, a subordinate patrol major who investigated the conduct of and recommended the demotion of a captain, for violating the captain's First Amendment right of association); *Saye v. St. Vrain Sch. Dist. RE-IJ*, 785 F.2d 862 (10th Cir. 1986) (reversing directed verdict

for defendant school district *and defendant principal* in §1983 retaliation action brought by teacher because she presented evidence that principal had recommended her non-renewal in retaliation for her union participation, that the superintendent "relied on [the principal's] recommendation to a substantial extent in presenting the matter to the School Board," and that "School Board members . . . relied completely on the recommendations of the administration in voting not to renew" plaintiff's contract); *Professional Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258, 266 (5th Cir. 1984) (upholding liability under §1983 of college president who recommended discharge of faculty members in retaliation for First Amendment activity where the Board of Trustees followed that recommendation, and holding that "[i]t is not necessary that the improper motive be the final link in the chain of causation: if an improper motive sets in motion the events that lead to termination that would not otherwise occur, 'intermediate steps[s] in the chain of causation' do not necessarily defeat the plaintiff's claim"); *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F. 3d 1014, 1039 (7th Cir. 2003), *quoting*, *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (as with §1981, individual liability under §1983 is appropriate where the "individual defendant caused or participated in a constitutional deprivation.").

Here, ¶¶15 – 20 of the Complaint make specific allegations supporting an inference of Brannen's racial *animus* against African Americans generally, and

Blash specifically, ¶18 links Brannen's racial *animus* against "n------" with his

desire "to get" Blash, and ¶29 alleges that Brannen insisted to then-Sheriff Cape

that Blash be terminated.  These allegations are sufficient to make out a claim of

cat's paw liability against Brannen individually under §§1981 and 1983, as

established by the above case law including the Eleventh Circuit's discussion of

cat's paw liability in *Polion*.

POINT IV
BRANNEN SUED IN HIS OFFICIAL CAPACITY
IS THE DECISION MAKER

Sued in his *official capacity*, Danny Brannen, as Sheriff, <u>is</u> the decision

maker.  The official capacity suit is not against Brannen individually, but rather,

against the Sheriff, who currently happens to be Brannen.  In the event that

Brannen might cease to be the Sheriff, his successor would then be substituted – in

his *official capacity*.  Thus, the fact that Brannen was not the Sheriff at the time

that Blash was fired is immaterial to the official capacity suit.

In any event, in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) the

Supreme Court held that,

> It would be a different matter if a series of decisions by a
> subordinate official manifested a "custom or usage" of
> which the supervisor must have been aware. . . . the
> supervisor could realistically be deemed to have adopted
> a policy that happened to have been formulated or
> initiated by a lower-ranking official.

That is what Plaintiff adequately pleads in the Complaint. ¶¶16 and 17 allege that then-Sheriff Cape was aware of racially biased comments by Brannen, that Cape ordered Brannen to take an anger management class, that Brannen failed to do that but was not disciplined for the failure. ¶18 alleges that Brannen said that he (Brannen) would "get that n-----" (Plaintiff), an unambiguous statement of racial *animus*. ¶20 alleges that then-Sheriff Cape was aware of Brannen's order to Taser a black male who was in custody and did nothing about it. ¶21 alleges that "[i]n these and other similar ways, Defendant Brannen maintained, and then-Sheriff Cape was aware of and tolerated, a racially harassing workplace . . ." As demonstrated above, this is all that is required at this *pleading* stage. *Twombly*, 550 U.S. at 555, Fed.R.Civ.P. 8. Thus, Plaintiff is entitled to discovery regarding this issue, and dismissal at this pleading stage would be "unwarranted." *Ancata*, 769 F.2d at 706.

<u>CONCLUSION</u>
<u>BRANNEN'S MOTION TO DISMISS IN HIS INDIVIDUAL CAPACITY
SHOULD BE GRANTED AS TO PLAINTIFF'S CAUSES OF ACTION UNDER
TITLE VII, AND SHOULD OTHERWISE BE DENIED IN ALL RESPECTS, OR
IN THE ALTERNATIVE PLAINTIFF SHOULD BE GRANTED LEAVE TO
REPLEAD</u>

Respectfully submitted this 12th day of April 2018.

s/<u>Robert N. Marx</u>
Robert N. Marx
Georgia Bar No. 475280
Jean Simonoff Marx
Georgia Bar No. 475276
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Tel. (404) 261-9559
Email: lawyers@marxlawgroup.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

-------------------------------------------------------x

JOHNNY BLASH,                                    :

              Plaintiff,                  :

vs.                                              :    CIVIL ACTION
                                                          FILE NO. 5:17-cv-00380-TES
CITY OF HAWKINSVILLE &
PULASKI COUNTY, GEORGIA,                          :
SHERIFF'S OFFICE; HAWKINSVILLE –
PULASKI COUNTY, GEORGIA; BILLY    :
CAPE; and DANNY BRANNEN,
Individually and in his Official Capacity as    :
Sheriff, Pulaski County, Georgia,

                                                 :

              Defendants.                :

-------------------------------------------------------x

## CERTIFICATE OF SERVICE

       This is to certify that on April 12, 2018, I electronically filed **Plaintiff's Revised Memorandum of Law in Opposition to Motion to Dismiss by Danny Brannen (Doc. 10),** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

                  Donald Andrew Cronin, Jr., Esq.
                  103 Keys Ferry Street
                  McDonough, GA 30253
                  donald@oqclaw.com

Respectfully submitted this 12th day of April 2018.

                       s/Robert N. Marx

Robert N. Marx
Georgia Bar No. 475280
Jean Simonoff Marx
Georgia Bar No. 475276
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Tel. (404) 261-9559
Email: lawyers@marxlawgroup.com