# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **JOHNNY BLASH,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:17-cv-00380-TES** |
| **CITY OF HAWKINSVILLE AND PULASKI COUNTY, GEORGIA SHERIFF'S OFFICE; HAWKINSVILLE-PULASKI COUNTY, GEORGIA; BILLY W. CAPE; and DANNY BRANNEN;** | |
| *Defendants.* | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Before the Court for consideration is Defendant Danny Brannen's Motion to Dismiss [Doc. 10], Defendant Billy Cape's Motion to Dismiss [Doc. 11], Defendant Pulaski County Sheriff's Office's Motion to Dismiss [Doc. 12], and Defendant Pulaski County's Motion to Dismiss [Doc. 13]. As explained below, the Court **GRANTS** each Defendants' motion except to certain claims against Defendants Brannen and Cape.

## FACTUAL BACKGROUND

### Plaintiff's Complaint

The Court takes the following facts from Plaintiff's Complaint [Doc. 1] and assumes them to be true for the purposes of ruling on Defendants' Motions to Dismiss [Docs. 10, 11, 12, 13]. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiff is an

African-American male alleging race discrimination under 42 U.S.C. §§ 2000e *et seq.*

("Title VII") and 42 U.S.C. § 1981.[1] Plaintiff contends that Defendant Brannen created (and

Sheriff Cape tolerated) a racially-hostile workplace environment and that Sheriff Cape

fired him because he is black. [Doc. 1, at ¶¶ 1, 7].

Plaintiff served as a Deputy in the Pulaski County Sheriff's Office from June 10,

2010, to on or about December 1, 2014. [*Id*. at ¶ 9]. At some point following Plaintiff's

employment, Defendant Brannen (a former Captain in the Pulaski County[2] Sheriff's

Office) succeeded Defendant Billy Cape as the Pulaski County Sheriff. [*Id*. at ¶¶ 10, 11].

Plaintiff alleges Defendant Brannen (during his tenure as a Captain) made four

"unambiguous" statements causing Plaintiff to believe that Brannen "harbored racial

*animus* against African Americans in general and against Plaintiff Blash specifically." [*Id*.

---

[1] As further explained below, Plaintiff's § 1981 claims may only be brought pursuant to § 1983 given that the alleged violator acted under color of state law. Section 1983 exists to remedy the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" and "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Busby v. City of Orlando*, 931 F.2d 764, 771 n.6 (11th Cir. 1991). Stated another way, state actors cannot be sued for constitutional violations outside the purview of § 1983. *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000). Therefore, the Court construes Plaintiff's § 1981 claims as claims asserted under § 1983 and not as direct actions via § 1981. Therefore, Plaintiff's § 1981 claims will be referred to as § 1983 claims throughout this order.

[2] Plaintiff's Complaint [Doc. 1] states that "Hawkinsville-Pulaski County, Georgia[,] is both a municipal corporation and a county created by and under the laws of the State of Georgia." [Doc. 1, at ¶ 3]. However, there is no such political body in Georgia. The City of Hawkinsville and Pulaski County are separate political entities that have not consolidated. Despite the passage of House Bill 286 by both chambers of the Georgia legislature in 2013, the affected voters rejected the bid to consolidate Pulaski County and the City of Hawkinsville. Therefore, the Court takes judicial notice that the only "county body" in this case is Pulaski County, not Hawkinsville-Pulaski County. *See* Andres David Lopez, *Pulaski County Voters Reject Consolidation with Hawkinsville*, The Telegraph (Nov. 6, 2013), http://www.macon.com/news/politics-government/election/article30125286.html.

at ¶ 15] (italics in original).

First, Plaintiff contends that Defendant Brannen stated, "If you're black and your lips are moving you're lying." [*Id*. at ¶ 16]. After learning of Brannen's alleged statement (apparently from someone other than Plaintiff), former Sheriff Cape directed Brannen to take an anger management course. [*Id*. at ¶ 17].[3] Second, after Plaintiff arrested a white woman (at the direction of Cape), Plaintiff contends that Brannen told the woman, "Don't worry, I will get that [ni—er] before you do." [Doc. 1, at ¶ 18]. Third, Plaintiff alleges that a white deputy, Jay Wood, received a promotion over an African American deputy, Mike Thomas. [*Id*. at ¶ 19]. Apparently, Thomas, who had worked for the Sheriff's Office longer than Wood, asked Defendant Brannen why he did not receive the promotion, and Brannen replied, "We promote one black and one white." [*Id*.]. Finally, Plaintiff alleges that Brannen ordered Deputy Thomas (the same deputy described above) to use a Taser on a black inmate. When Deputy Thomas refused, Brannen allegedly said, "When I tell you to Taze a [m----------r], you better Taze him." [*Id*. at ¶ 20]. Plaintiff further complains that former Sheriff Cape knew of Brannen's statements and "did nothing about it." [*Id*.]. Based on these "and other similar actions," Plaintiff alleges that Defendant Brannen created and maintained, and former Sheriff Cape tolerated, a racially-hostile workplace. [*Id*. at ¶ 21].

---

[3] Plaintiff contends that Brannen neither took the prescribed anger management class nor was otherwise disciplined in any way. [Doc. 1, at ¶ 17].

On or about December 1, 2014, Sheriff Cape terminated Plaintiff for allegedly interfering with a criminal investigation involving a postal employee suspected of stealing pills being sent in the mail. *See* [Doc. 1, at ¶¶ 24, 29]. However, Plaintiff alleges that Sheriff Cape actually fired him simply because he is black.

The events surrounding Plaintiff's termination involve an October 2014 Sheriff's Office investigation and successful sting operation that resulted in the arrest of a female postal worker suspected for theft of or improper acquisition of medication for the purpose of distribution. [*Id*. at ¶ 25]. Plaintiff allegedly told a civilian to stay away from the postal employee suspected of stealing pills. [*Id*. at ¶ 24]. According to his complaint, Plaintiff allegedly made this communication despite a lack of probable cause or the fact that authorities never identified the civilian as a potential suspect or person of interest. [*Id*. at ¶¶ 24, 25].

Plaintiff also contends that "[a]t the time of his alleged 'interference with an investigation' . . . the investigation had already been concluded and the sting successful." [*Id*.]. Initially, the Sheriff's Office asked Plaintiff to resign, but Plaintiff refused to do so because he believed he had done nothing wrong. [*Id*. at ¶ 30]. Plaintiff alleges that he— as well as Defendants Brannen and Cape—was aware of the "common practice of officers telling civilians that they should stay away from potential criminals" and, in essence, asserts that his termination for the alleged offense of interference with an investigation "was bogus." [Doc. 1, at ¶ 27]. Plaintiff was especially upset that he was fired without the

Sheriff or the Georgia Bureau of Investigation conducting an "official investigation" into his conduct like two white officers received when they were accused of committing a crime. [4] [*Id*. at ¶¶ 33, 35].

Plaintiff appealed his termination to the sole commissioner for Pulaski County. [Doc. 1, at ¶ 32]. The Commissioner ultimately upheld the termination on the grounds that "the Sheriff . . . is a Constitutional Officer who has exclusive authority over employees of the Sheriff's [O]ffice." [*Id*.]. After his termination, the Pulaski County Grand Jury indicted him for interfering with an investigation. [*Id*. at ¶ 37]. Subsequently, authorities arrested Plaintiff. [*Id*. at ¶¶ 38, 39]. The District Attorney ultimately moved to dismiss the indictment against Plaintiff, whereupon the superior court entered an order to "nol pross[]" Plaintiff's charges. [*Id*. at ¶¶ 39, 41].

To summarize, Plaintiff avers that Defendants Brannen and Cape subjected him to a racially hostile workplace environment and discharged him on the basis of race. [*Id*. at ¶¶ 42, 43]. As a result, Plaintiff asserts the following claims: Count 1, race discrimination under Title VII; Count 2, racial harassment under Title VII; Count 3, race discrimination under § 1983; and Count 4 racial harassment under § 1983. [Doc. 1, at 13, 14].

---

[4] This incident involved Deputies Chris White and Jordan Peavy, accused of assaulting an African American male. Sheriff Cape refused to take any disciplinary action against these two deputies until after an investigation by the Georgia Bureau of Investigation. [*Id*. at ¶ 36].

## DISCUSSION

### A.  Motion to Dismiss Standard of Review

Defendants seek to dismiss Plaintiff's action against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, a district court must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In fact, a well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Id*. at 678. Further, a complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The factual allegations in a complaint "must be enough to raise

a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555 (first alteration in original). Finally, complaints that tender "'naked assertion[s]'[5] devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

With the foregoing standard in mind, and taking the facts asserted in Plaintiff's complaint as true, the Court rules on the Defendants' respective Motions to Dismiss [Docs. 10, 11, 12, 13].

## B. Analysis

In his complaint, Plaintiff asserts four counts: racial discrimination and racial harassment under Title VII (Counts 1 & 2) and racial discrimination and racial harassment under § 1981 via § 1983 (Counts 3 & 4). [Doc. 1, at 13-14]. In deciding the pending Motions to Dismiss [Docs. 10, 11, 12, 13], the Court takes each claim as it relates to each Defendant, in turn below:

---

[5] "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitle[ment] to relief." *Twombly*, 550 U.S. at 557 (second alteration in original) (internal quotations and citations omitted).

1.  **Defendant Pulaski County Sheriff's Office's Motion to Dismiss [Doc. 12]**

As an initial matter, the Court addresses Plaintiff's claims for race discrimination and racial harassment asserted against Defendant Pulaski County Sheriff's Office. The issue of whether a government entity is capable of being sued is "determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b); *accord Lawal v. Fowler*, 196 F. App'x. 765, 768 (11th Cir. 2006). Under Georgia law, only three classes of legal entities are capable of being named in a lawsuit: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." *Lawal*, 196 F. App'x at 768 (citing *Ga. Insurers Insolvency Pool v. Elbert Cty.*, 368 S.E.2d 500, 502 (Ga. 1988)). A sheriff's office does not fall into any of the categories and therefore is not capable of being sued. *Ashley v. Chafin*, No. 7:07-cv-177(HL), 2009 WL 3074732, at *3 (M.D. Ga. Sept. 23, 2009).

In response, Plaintiff conceded the point and agreed that the Pulaski County Sheriff's Office should be dismissed. *See* [Doc. 28]. Accordingly, the Court **GRANTS** Defendant Pulaski County Sheriff's Office's Motion to Dismiss [Doc. 12] all claims asserted against it.

2.  **Defendant Pulaski County's Motion to Dismiss [Doc. 13]**

Defendant Pulaski County filed its own Motion to Dismiss [Doc. 13]. In short, Pulaski County argues that Georgia law's treatment of sheriff's employees leads to the inevitable conclusion that the county and a sheriff's office are independent, separate, and

distinct from one another. *See* [Doc. 13, at 5]. The County argues that under O.C.G.A. § 15-16-23, sheriffs alone hire and fire their deputies and therefore are employees of the sheriff, not the county. [*Id*.]; *see also Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003); *Employees Retirement Sys. v. Lewis*, 136 S.E.2d 518, 521 (Ga. Ct. App. 1964) (holding that sheriffs alone are entitled to appoint and discharge their employees). Most importantly, Defendant Pulaski County points out that "Georgia's Constitution [] makes the sheriff's office a constitutional office[6] independent from the county entity itself, precludes all county control, and grants only the State control over sheriffs . . . ." *Manders*, 338 F.3d at 1312. Therefore, Pulaski County cannot be held liable under either of Plaintiff's Title VII claims.

As for Counts 3 and 4, Plaintiff asserts claims against Pulaski County for race discrimination and a hostile work environment pursuant to § 1981, again via § 1983. [Doc. 1, at 14]. *Monell v. Department of Social Services of City of New York*, holds that local governing bodies can be sued directly under § 1983 for relief where the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation,

---

[6] The Eleventh Circuit has clearly held that,

> this 'county officer' nomenclature necessarily reflects a geographic label defining the territory in which a sheriff is elected and mainly operates. It is entirely consistent for sheriffs to be independent of the county government and to be subject to State, not county, control but to be called 'county officers' to reflect their geographic jurisdiction in the State.

*Manders v. Lee*, 338 F.3d 1304, 1312 (11th Cir. 2003). Further, "[a]lthough the State requires the county to fund the sheriff's budget, Georgia's Constitution precludes the county from exercising any authority over the sheriff, including how the sheriff spends that budget." *Id*. at 1311; *see also* GA. CONST. art. IX, § 2, ¶ 1(c)(1).

or decision officially adopted and promulgated by that body's officers. 436 U.S. 658, 690 (1978). The very essence of a § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of constitutionally protected rights. *Id*. at 690-91. Therefore, "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id*. (quotations in original). "If a county official holds final policymaking authority for the county in the subject area of the alleged constitutional violation, that official's decisions may constitute county policy." *Gattis v. Brice*, 136 F.3d 724, 725 n.2 (11th Cir. 1998). However, the determination of whether a county official holds final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

Here, Plaintiff seems to allege that the actions of Pulaski County's former sheriff constitute the promulgated policy necessary to subject Pulaski County to § 1983 liability. However, as discussed above, Georgia law makes the Office of the Sheriff a completely independent and separate entity from the county. *See Manders supra*; *see also supra* GA. CONST. art. IX, § 2, ¶ 1(c)(1). Finally, while the Sheriff may be considered a "policymaking official," the Georgia Court of Appeals has held that the sheriff himself, and not the county, is liable for misconduct within the Office of the Sheriff. *Brown v. Jackson*, 470 S.E.2d 786, 787 (Ga. Ct. App. 1996). For these reasons, as well the fact that Plaintiff did

not oppose the County's Motion to Dismiss [Doc. 29], the Court **GRANTS** Pulaski County's Motion to Dismiss [Doc. 13] all claims asserted against it.

### 3. <u>Defendant Brannen's Motion to Dismiss [Doc. 10]</u>

Plaintiff brings suit against Danny Brannen in both his individual and official capacities. *See* [Doc. 1, at ¶ 5]. In his complaint, Plaintiff asserts claims against Defendant Brannen under Title VII and § 1983 relating to Plaintiff's alleged discriminatory termination and Defendant Brannen's purported creation of a racially hostile work environment.

### i. **Plaintiff's Title VII Claims Asserted Against Brannen in His Individual Capacity**

First, the Court addresses the individual capacity claims asserted against Defendant Brannen under Title VII: Count One, race discrimination and Count Two, racial harassment. [Doc. 1, at 13-14].

Defendant Brannen seeks dismissal of the race discrimination and racial harassment claims against him on the grounds that individuals are not amenable to suit under Title VII.[7] *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006). In his Response [Doc. 30], Plaintiff acknowledges that dismissal of Count One (Race Discrimination, Title

---

[7] In *Dearth*, the Eleventh Circuit unequivocally stated,

> [T]here is nothing in Title VII . . . or anywhere else in our precedent that suggests that Title VII's limitation of liability to employers is applicable only in situations where the employer is a public entity. To the extent that we have not so held before, we now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company. 441 F.3d 991, 933 (11th Cir. 2006).

VII) and Count 2 (Racial Harassment, Title VII) is appropriate as to Defendant Brannen in his individual capacity because Title VII does not, in fact, provide for individual liability. *See* [Doc. 30, at 2]. Therefore, the Court **GRANTS** Defendant Brannen's motion to Dismiss [Doc. 10] as to Plaintiff's Title VII claims asserted in Counts 1 and 2 against Defendant Brannen in his individual capacity.

### ii. Plaintiff's § 1981 (§ 1983) Claims Asserted Against Brannen in His Individual Capacity

Second, the Court addresses the individual capacity claims asserted against Brannen in Counts 3 and 4 of Plaintiff's complaint: race discrimination and racial harassment, respectively, both brought under § 1983. [Doc. 1, at 14].

### a. § 1981 (§ 1983) Race Discrimination

Count 3 sets forth a race discrimination claim under § 1981 relating to Plaintiff's alleged discriminatory termination. [*Id*.]. As explained in Section 2 above, Plaintiff's § 1981 claim is, in fact, asserted and brought via § 1983.

Under § 1983, an individual can only be held liable when a plaintiff establishes a causal connection between the alleged unlawful conduct and the alleged harm. *Dixon v. Burke Cnty, Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). In his Response [Doc. 30], Plaintiff attempts to survive Brannen's Motion to Dismiss [Doc. 10], by placing emphasis on the word "may" from *Zatler*. However, such emphasis does

not change the outcome here. [Doc. 30, at 13]. Reading further in *Zatler*, the Court notes "the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." 802 F.2d at 401; *see also Berry v. Leslie*, 767 F.3d 1144 (11th Cir. 2014). That said, the connection between alleged conduct and alleged harm must be legally sufficient to satisfy notions of common fairness and policy. *Dixon*, 303 F.3d at 1275. The parties do not dispute that Sheriff Cape, not Brannen, terminated Plaintiff. *See* [Doc. 1, at ¶ 31]; *see also* [Doc. 10, at 6]. Normally, because Cape, not Brannen, fired Plaintiff, the analysis would end.

However, "[u]nder a 'cat's paw' theory, 'causation may be established if the plaintiff shows that the decision maker followed the biased recommendation [of the employee] without independently investigating the complaint against the [plaintiff].'" *Williams v. Cleaver-Brooks, Inc.*, No. 7:11-CV-144 (HL), 2012 WL 6151141, at *5 (M.D. Ga. Dec. 11, 2012) (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (second alteration in original)).

But, as Brannen aptly points out, Plaintiff's complaint cannot support a cat's paw theory. Plaintiff's complaint unequivocally alleges that former Sheriff Cape permitted Plaintiff the opportunity "to resign." [Doc. 1, at ¶ 30]. Thus, assuming that Brannen insisted that Cape *fire* Plaintiff, the admitted fact that Cape offered Plaintiff a chance to resign, fatally undercuts any argument that Brannen effectively made Cape's decision to

fire Plaintiff.

As another matter, a causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers. *Dixon*, 303 F.3d at 1275. According to the Plaintiff's complaint, "Defendant Cape told [Plaintiff] that he had full autonomy to terminate him." [Doc. 1, at ¶ 31]. Here, Sheriff Cape showed that he was both deliberative and autonomous from Brannen when he offered Plaintiff the chance to resign and fully declared his autonomy before firing Plaintiff after Plaintiff rejected his offer to resign. Therefore, Brannen's desire that former Sheriff Cape terminate Plaintiff is legally irrelevant to this claim. Because Brannen did not fire Plaintiff, he cannot be individually liable under § 1983. Therefore, the Court **GRANTS** Defendant Brannen's Motion to Dismiss [Doc. 10] Plaintiff's § 1983 race discrimination claim asserted in Count 3 against Brannen in his individual capacity.

### b.      § 1981 (§ 1983) Racial Harassment

Count 4 (Racial Harassment) sets forth a hostile work environment claim under § 1981, and as with Plaintiff's other claims asserted under § 1981, Count 4's § 1981 racial harassment claim is also asserted and brought via § 1983. Additionally, to set the analytical stage for a racial harassment claim brought under § 1981 via § 1983, the Court notes that these claims are subject to the same standards of proof and should be evaluated using the same framework applicable to hostile work environment claims asserted via

Title VII. *See Bryant v. Jones*, 575 F.3d. 1281, 1296 (11th Cir. 2009).

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

In his Motion to Dismiss [Doc. 10], Brannen argues that Plaintiff's complaint, as it relates to a hostile work environment claim, fails as a matter of law and must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Brannen bases his argument on Plaintiff's failure to allege facts demonstrating that he (Brannen) subjected him to a severe or pervasive work environment effectively altering the conditions of his employment. Determining whether the harassment was sufficiently severe or pervasive involves "both an objective and subjective component." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). The harassing "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Miller*, 277 F.3d at 1275. In determining the objective element, a court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann*, 526 F.3d at 1375 (*quoting National Railroad Passenger Corporation*

*v. Morgan*, 536 U.S. 101, 116 (2002), *superseded in non-relevant part by statute, Lily Ledbetter Fair Pay Act of 2009*) (internal quotation and citation omitted).

In other words, "the employee must subjectively perceive the harassment as sufficiently severe and pervasive," and "this subjective perception must be objectively reasonable." *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806 (11th Cir. 2012) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (internal quotations omitted). In deciding hostile work environment claims, courts frequently remind litigants that "Title VII is not a general civility code, and simple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment." *Guthrie*, 460 F. App'x at 806 (alterations, citation, and internal quotation marks omitted).

Aside from severity of conduct, one crucial element in bringing a hostile work environment claim is an assertion that the conditions of his work environment altered the conditions of his employment. *See Harris* 510 U.S. at 21 (1993). Not a single paragraph in Plaintiff's complaint provides any factual detail to this all-important element. Without such, there is no foundation upon which Plaintiff can support his hostile work environment claim. While Plaintiff does assert, in paragraph 46, that "[a]s a result of Defendants' unlawful discriminatory actions, Plaintiff has suffered and continues to suffer economic damages and mental and emotional distress" there is nothing specifically addressing *how* the alleged discriminatory actions affected his day-to-day employment.

[Doc. 1, at 13]. Further, this paragraph supports only the impact of Plaintiff's termination, not the altered conditions of employment. Given Plaintiff's failure to allege or offer a single factual detail as to how Brannen's comments altered the conditions of his employment, Plaintiff's complaint fails as a matter of law to state a hostile work environment claim. *Iqbal*, 556 U.S. at 678.

As an additional basis to dismiss Plaintiff's claim, Defendant Brannen argues that "the frequency requirement [of a hostile work environment claim] requires more than a handful of harassing incidents." [Doc. 10, at 8]. In support, Defendant Brannen cites an Eleventh Circuit case holding that three instances of harassment "occurring over an eleven-month period . . . were far too infrequent to alter the conditions under which [the plaintiff] was required to perform her job." *Mendoza*, 195 F. 3d. 1238, 1250 (11th Cir. 1999).

Brannen also cites to *McCann v. Tillman*, 526 F.3d. 1370 (11th Cir. 2008). In his brief, Brannen unequivocally cites *McCann* for the holding that "another coworker referr[ing] to a former black employee as a "n***** []" on two occasions did not amount to severe or pervasive harassment." [Doc. 10, at 9].[8] To the contrary, Plaintiff points to a case where

---

[8] A fair reading of this statement would lead the reader to infer that McCann actually heard her supervisor make the racially derogatory comment. To the extent Defendant Brannen attempts to persuade the Court that the Eleventh Circuit held that "a another coworker refer[ing] to a black employee as a 'ni**** bitch' did not amount to severe or pervasive harassment[]" to create a hostile work environment, its argument, reading, and interpretation of *McCann* is flawed. [*Id.*].

Rather, the Eleventh Circuit never indicated that the substance of the defendant's offensive comment was not severe or pervasive. *McCann* clearly states, "[a]lthough McCann heard racial epithets being spoken twice by Sheriff Tillman, these were never directed at McCann, nor spoken in her presence." 526 F.3d at 1379. The Eleventh Circuit affirmed the district court's grant of summary judgment, not on the severity of the language used by McCann's supervisor, but on the fact that the comments were never made about or

the Eleventh Circuit recognized that "'[t]he use of the slur [ni—er] is severe' . . ." *Cooler v. Layne Christensen Company*, 710 F. App'x 842, 848 (11th Cir. 2017) (quoting *Adams v. Austal, U.S.A., LLC.*, 754 F.3d 1240, 1255 (11th Cir. 2014)); *see also* Response [Doc. 30, at 6]. However, Plaintiff's quote of *Cooler* is woefully incomplete. *Cooler* further goes on to say that ". . . isolat[ed] use[s] of a racial epithet on one occasion is not enough evidence of severe or pervasive harassment to make a hostile work environment claim." *Id*. Thus, *Cooler* actually supports Brannen's position on severity.

Though there is no "magic number" of comments or behavior that must be done to create a hostile work environment, as stated above, mere offhanded comments and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *See Miller*, 277 F.3d at 1269; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Plaintiff bases his hostile work environment case on four statements allegedly made by Brannen: "If you're black and your lips are moving you're lying" [Doc. 1 at ¶ 16]; "Don't worry, I will get that [ni—er] before you do" [*Id.*, at ¶ 18]; "We promote one black and one white" [*Id.*, at ¶ 19]; and "When I tell you to Taze a [m----------r], you better Taze him" [*Id*. at ¶ 20].

These statements span from sometime in 2012 until some point in 2014. [Doc. 1,

---

to McCann or spoken within her hearing. *Id*. at 1378-79.

at ¶¶ 16, 18-20]. Plaintiff's complaint only provides the year (i.e. "In or about 2014, . . . ") in which the statement was made. Thus, giving Plaintiff the benefit of all doubt, Brannen spoke four questionable statements over a maximum 36-month span. *Mendoza* held that three statements over an 11-month period was neither severe nor pervasive enough to support a hostile work environment claim. Thus, a maximum of four statements over 36 months must also fail.[9] Accordingly, these statements, even when liberally construed in the Plaintiff's favor, fail to meet the standard necessary to survive a motion to dismiss for failure to state a claim.

Further, the Plaintiff's complaint clearly indicates that Plaintiff did not hear the statements himself. When describing the Brannen statements, Plaintiff includes the limiting phrase "upon information and belief" in each relevant paragraph. [Doc. 1, at ¶¶ 16-20]. The Court can only reasonably infer that the Plaintiff did not hear these statements directly or else the Plaintiff would not have chosen such qualifying language. Simply put, the complaint, as drafted, lacks any evidence that Defendant Brannen aimed any of the alleged racially derogatory statements at Plaintiff, or spoke the statements directly to Plaintiff or even in Plaintiff's hearing.[10] *Cf. McCann*, 526 F.3d at 1379.

---

[9] Moreover, two of these statements cannot reasonably be construed or interpreted as racial. First, calling someone a "motherfucker" does not, in and of itself, objectively indicate racial animus. Second, any statement alleging that a sheriff promotes "one black and one white" is not rooted in racial animus.

[10] While the Court does not find that second-hand comments are irrelevant to a hostile work environment claim, these types of conduct are not as severe as comments and conduct that a plaintiff hears or experiences first-hand. *Williams v. Ruskin Co., Reliable Div.*, 1:10-cv-508-WC, 2012 WL 692964, at *14 (M.D. Ala. Mar. 1, 2012).

In response [Doc. 30], Plaintiff states that the racially charged statements were "directed specifically at Mr. Blash with reference to 'get[ting] him.'" [Doc. 30, at 5]. However, the Court may not consider such contradictions in ruling on the instant motion to dismiss because Plaintiff effectively attempts to amend the allegations in his complaint through a responsive brief.[11]

The statements, as Plaintiff chose to lay them out in his complaint, fail to allege that he actually heard any of the statements or when he learned that Brannen may have made them. In fact, there is nothing upon which the Court can conclude that the Plaintiff even knew of the statements before he was terminated in December of 2014. A plaintiff simply must do more.

Thus, taking the facts as presented, Plaintiff's complaint fails to "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 547 (2007). Considering this evidence in a light most favorable to Plaintiff, giving Plaintiff the benefit of all reasonable doubt, and assuming all of Plaintiff's proffered evidence is admissible, the Court concludes that, under the totality-of-the-circumstances standard, Plaintiff cannot establish a *prima facie* case of hostile work environment based on his race. Consequently, Plaintiff fails to sufficiently plead a hostile work environment claim

---

[11] A plaintiff may not amend his complaint by raising new allegations in a response brief. *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal.); *see* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the party's written consent of the court's leave.")

against Brannen and his complaint, as drafted, is not enough to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678.

Finally, there is no need to allow this claim to proceed because all of the incidents that are material to Plaintiff's hostile work environment claim are necessarily within his knowledge pre-discovery. No additional incidents of harassment or behavior by Brannen, if any exist, that Plaintiff may learn about for the first time through discovery will aid in the prosecution of his hostile work environment claim and this claim is as factually ripe as it will ever be. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1250 (11th Cir. 2014) (holding that a plaintiff cannot support a hostile work environment claim based on incidents learned after employment ended or upon what discovery later reveals).

Therefore, the Court **GRANTS** Defendant Brannen's Motion to Dismiss [Doc. 10] Plaintiff's § 1981 (§ 1983) racial harassment claim asserted in Count 4 against Brannen in his individual capacity.

### iii. Plaintiff's Title VII Claim of Racial Harassment Asserted Against Brannen in His Official Capacity

In Counts 1 and 2, Plaintiff sued Defendant Brannen in his official capacity under Title VII as the current Pulaski County Sheriff. Effectively, Plaintiff seeks to hold the current sheriff liable for the official acts of the former sheriff. Under the unique facts and circumstances of this case, if Plaintiff were to succeed, Brannen would be held liable today for the acts that he committed as captain. Specifically, if Plaintiff could prove that former-Sheriff Cape tolerated a racially hostile environment created by Brannen, then Brannen

would be legally responsible because he happened to be the sheriff when Plaintiff filed his suit.

However, the Court has already ruled that the Plaintiff failed to establish a plausible claim for a hostile work environment (by then-Captain Brannen) under Title VII and § 1983. Thus, former Sheriff Cape could not be liable for a hostile work environment claim under either statute. And, if the former sheriff is not liable, then it necessarily follows that the current sheriff is not liable.

Therefore, the Court **GRANTS** Defendant Brannen's Motion to Dismiss [Doc. 10] Plaintiff's hostile work environment claim asserted in Count 2 against Brannen in his official capacity.

### iv. Plaintiff's § 1981 (§ 1983) Race Discrimination Claim Asserted Against Brannen in His Official Capacity

The Court notes that Defendant Brannen, in his Motion to Dismiss [Doc. 10], did not move for dismissal of Counts 1 and 3 of Plaintiff's complaint. Thus, Plaintiff's Title VII and § 1981 (§ 1983) claims of race discrimination asserted against Brannen in his official capacity survive this order.

The Court harbors grave concerns about § 1983 claims brought against Brannen in is official capacity due to *Halliburton v. Peach Cnty. Sheriff's Dep't.*, No. 5:11-CV-109(MTT), 2012 WL 4468764 (M.D. Ga Sept. 26, 2012) and the Eleventh Amendment to the United States Constitution, as expressed in *Melton v. Abston*, 841 F.3d 1207 (11th Cir. 2016).

Regarding issues of immunity, the Court provides notice of its intent to consider

dismissing the § 1983 claims against Defendant Brannen in his official capacity in light of the authorities cited in the preceding paragraph. In accordance with *Jefferson Fourteenth Assoc. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526-27 (11th Cir. 1983), the Court is required to give time for the parties to respond. Therefore, the Court gives Plaintiff 21 days to so respond, if he so wishes, and gives Defendant Brannen 14 days to reply or affirmatively state that he does not wish to reply. S*ee also Helton v. Hawkins*, 12 F. Supp. 2d 1276, 1283 (M.D. Ala 1998) (quoting *Wyatt v. City of Boston*, 35 F.3d 13, 14-15 (1st Cir. 1994) ("a district court may, in appropriate circumstances, note the inadequacy of the complaint and, on its own initiative, dismiss the complaint. Yet a court may not do so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issue.")).

### 4. <u>Defendant Billy Cape's Motion to Dismiss [Doc. 11]</u>

Plaintiff brings suit against Billy Cape only in his individual capacity. *See* [Doc. 1, at ¶ 4]. In his complaint, Plaintiff asserts claims against Defendant Cape under Title VII and § 1981 (§ 1983) relating to Plaintiff's alleged discriminatory termination and Defendant Cape's purported tolerance of a racially hostile work environment.

### i. **Plaintiff's Title VII Claims Asserted Against Cape in His Individual Capacity**

First, the Court addresses the individual capacity claims asserted against Cape and turns to Counts 1 and 2 of Plaintiff's Complaint [Doc. 1]. Again, Plaintiff's first two counts arise under Title VII: Count 1, race discrimination and Count 2, racial harassment. [*Id*. at

13-14].

Similar to Defendant Brannen, Defendant Cape moves to dismiss the race discrimination and racial harassment claims against him on the grounds that individuals are not amenable to suit under Title VII.[12] *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006). In his Response [Doc. 27], Plaintiff acknowledges that dismissal of Count 1 (Race Discrimination, Title VII) and Count 2 (Racial Harassment, Title VII) is appropriate as to Defendant Cape sued in his individual capacity because Title VII does not, in fact, provide for individual liability. *See* [Doc. 27, at 3]. Therefore, the Court **GRANTS** Defendant Cape's Motion to Dismiss **[**Doc. 11] Plaintiff's Title VII claims asserted against Defendant Cape in his individual capacity.

### ii.    Plaintiff's § 1981 (§ 1983) Claims Asserted Against Cape in His Individual Capacity

Counts 3 and 4 set forth a race discrimination claim under § 1981 (§ 1983) relating to Plaintiff's alleged discriminatory termination (Count Three) and racial harassment (Count Four). [Doc. 1, at 14].

### a.    § 1981 (§ 1983) Race Discrimination

Thankfully, for Plaintiff, a complaint's allegations do not need to be hefty with minute facts, but still nevertheless requires some showing of entitlement to relief. *Twombly*, 550 U.S. at 557 (2007). Count 3's racial discrimination claim meets this standard,

---

[12] *See* fn.7, *supra*.

albeit barely. Plaintiff is entitled to conduct discovery as to the circumstances surrounding his termination as it relates to his adverse employment action when compared to other white deputies. *See* [Doc. 1, at ¶¶ 35-38]. Accordingly, the Court **DENIES** Defendant Cape's Motion to Dismiss [Doc. 11] so that Plaintiff's § 1983 race discrimination claim asserted in Count 3 is permitted to proceed for further factual development.

### b.    § 1981 (§ 1983) Racial Harassment

Count 4 (Racial Harassment) sets forth a hostile work environment claim under § 1981, and as with Plaintiff's other claims asserted under § 1981, Court 4's § 1981 racial harassment claim is also asserted and brought via § 1983. Additionally, to set the analytical stage for a racial harassment claim brought under 42 U.S.C. § 1981 via § 1983, the Court notes that these claims are subject to the same standards of proof and should be evaluated using the same framework applicable to hostile work environment claims asserted via Title VII. *Bryant v. Jones*, 575 F.3d. 1281, 1296 (11th Cir. 2009).

Plaintiff has sued Defendant Cape for tolerating an allegedly hostile work environment. However, as explained above, the Court dismissed Plaintiff's claim for a hostile work environment against Defendant Brannen. Thus, logic dictates that if Brannen did not create a legally cognizable hostile work environment claim, then Defendant Cape could not have tolerated one. Therefore, the Court **GRANTS** Defendant Cape's Motion to Dismiss [Doc. 11] Plaintiff's § 1981 (§ 1983) claim asserted in Count 4 against Cape in

his individual capacity.

### 5.    Plaintiff's Requested Leave to Amend

In his Response [Docs. 27, 30] to Defendant Brannen [Doc. 10] and Defendant Cape's [Doc. 11] Motions to Dismiss, Plaintiff seeks "leave to replead" his complaint in the event the Court grants Defendants' motions to dismiss. It seems that Plaintiff seeks leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), which requires "the court's leave." Federal Rule of Civil Procedure 15(a)(2) directs the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, leave to amend is by no means automatic." *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979). The trial court has "extensive discretion" in deciding whether to grant leave to amend "when justice so requires." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999); in connection with Fed. R. Civ. P. 15(a)(2).

As the Eleventh Circuit has stated, "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (holding that "the Court may deny that request without further discussion") (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

If, after reading Defendants' Motions to Dismiss [Docs. 10, 11 respectively] Plaintiff believed that his complaint was insufficient, he should have filed his amended complaint (ostensibly to add detailed facts) within the time allotted by the Federal Rules.

Given Plaintiff's failure to do so, the Court will not permit him to do that now.

Effectively, Plaintiff asks for a "do-over" in the event of an adverse ruling. This the Court simply cannot do. Plaintiff drafted his complaint, filed it, and chose not to exercise his absolute right to amend his complaint within 21 days after receiving the Defendants' motions to dismiss. Thus, he must now proceed with the complaint as it is written. *See Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) ("A complaint may not be amended by briefs in opposition to a motion to dismiss.")

Accordingly, the Court exercises its discretion and **DENIES** Plaintiff's Motion for Leave to Amend Complaint.

<u>CONCLUSION</u>

In summation, the Court **GRANTS** all Defendants' Motions to Dismiss [Docs. 10, 11, 12, 13] with the exception of Plaintiff's Title VII race discrimination claim (Count 1) and § 1981 (§ 1983) race discrimination (Count 3) claim asserted against Defendant Brannen in his official capacity.

Additionally, Plaintiff's §1981 (§ 1983) race discrimination claim (Count 3) asserted against Defendant Cape in his individual capacity is permitted to proceed as well. Any and all future pleadings should appropriately reflect this ruling.

Plaintiff is once again reminded of his direction to show cause within 21 days why the Court should not dismiss his § 1981 (§ 1983) racial discrimination claims asserted against Brannen in his official capacity. Defendants Brannen and Cape must file an

answer within 14 days of this Order.

**SO ORDERED**, this 27th day of June, 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**